BLOCH *v.* DETROIT UNITED RAILWAY.

1. STREET RAILWAYS—NEGLIGENCE — DEATH — PEDESTRIANS — EVI-DENCE—QUESTION FOR JURY.

In an action against a street railway company for the negligent death of plaintiff's decedent, who was struck by defendant's street car while attempting to get his push cart off the track, but was hindered by a ridge of snow and ice on the side of the track, testimony by defendant's motorman that he was driving at from 12 to 15 miles per hour, that when he first saw deceased he was a little over half a block away, and supposed he was crossing the street, that when he saw deceased was staying on the track he put on the air, but the car skidded and struck deceased, *held*, to present a question of fact for the jury as to defendant's negligence.

2. SAME — CONTRIBUTORY NEGLIGENCE — EVIDENCE — QUESTION FOR JURY.

As to whether deceased was guilty of contributory negligence in failing to leave his cart and step out of danger, when he found the obstruction interfered with his progress, *held*, a question of fact for the jury.

3. SAME—HIGHWAYS AND STREETS—SNOW AND ICE—NOTICE.

While deceased was entitled to use that part of the street occupied by defendant's track, he was chargeable with knowledge of the fact that the ridge of snow and ice had been formed outside of the rail, which might render it difficult for him to quickly remove his cart therefrom.

4. SAME—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

Whether it was prudent for deceased, in view of the condition in which the track was, and the presence of the ridge of snow and ice near the rail, to use the track on the particular night in question, *held*, a question of fact for the jury.

5. SAME—TRIAL—INSTRUCTIONS—REQUESTS TO CHARGE — ASSUMPTIONS IN REQUEST NOT WARRANTED BY EVIDENCE.

The trial court properly refused a requested instruction which assumed that the car was run at such reckless

On right of motorman to assume that person on track will get out of way, see note in 21 L. R. A. (N. S.) 880.

rate of speed that it could not be stopped within the motorman's range of vision where there was testimony that the speed was not more than 15 miles per hour and the motorman expected deceased to step off the track when he heard the gong.

6. SAME—NEGLIGENCE—DUTY OF MOTORMAN—INSTRUCTIONS.
An instruction by the trial court that "If you believe that the motorman did all that a reasonably prudent motorman would have done under similar circumstances, that the car skidded and on that account he was not able to stop it, I charge you on this account that the defendant would not be negligent," held, correct.

7. SAME.
The trial court properly instructed the jury that it was not incumbent upon the motorman to stop his car or take measures so to do until he saw that the deceased was not going to get off the track, or was in such a position that he could not get off the track in time to avoid being struck, since the motorman was not bound to anticipate that a pedestrian would not step off, or be prepared for a contingency so unlikely to happen.

8. SAME—REQUESTS TO CHARGE—CHARGE AS WHOLE.
While some of plaintiff's requests to charge might well have been given, there was no error in refusing same where the charge as a whole fairly presented the claims of the parties and the law applicable thereto.

9. NEW TRIAL—CONFLICTING TESTIMONY—WEIGHT OF EVIDENCE.
Although there was much conflict in the testimony, it cannot be said, as a matter of law, that the verdict for defendant was so contrary to the weight of the evidence as to warrant this court in setting it aside

Error to Wayne; Mandell (Henry A.), J. Submitted June 16, 1920. (Docket No. 35.) Decided July 20, 1920.

Case by Stanley Bloch, administrator *de bonis non* of the estate of Kaspar Dziwak, deceased, against the Detroit United Railway for the alleged negligent killing of plaintiff's decedent. Judgment for defendant. Plaintiff brings error. Affirmed.

*Benedict H. Lee*, for appellant.

*Frederic T. Harward* and *Corliss, Leete & Moody*, for appellee.

SHARPE, J. Kaspar Dziwak, the deceased, formerly lived on Holbrook avenue in the city of Detroit. In January, 1918, he moved to Belmont avenue. He had left some coal at his former home and on the evening of January 31, 1918, he was removing some of this coal to his Belmont avenue home, using a two-wheel push cart therefor. Much snow had fallen during the month of January, nine inches being on the ground on the 31st, as shown by the records of the weather bureau. The defendant operated a double line of track on Joseph Campau avenue, and by the use of snow plows and scrapers had swept much of the snow off its tracks, thus creating a pile or ridge of snow and ice outside the east rail of its track on which north-bound cars passed. The deceased, going north on this avenue, apparently because of the condition of the rest of the pavement, was pushing his cart between the rails of the north-bound track. After passing Norwalk street, his attention was attracted to the approach of a car going north. He turned his cart to the right and attempted to push it off the track, but it stuck in the ridge of snow. As he gave it a last violent push to get it off the track. the street car struck him, throwing him a distance of 35 or 40 feet, fracturing his skull and causing other injuries, from which he died about five hours later. The plaintiff as administrator brought suit, alleging several grounds of negligence on the part of defendant's motorman.

At the conclusion of the plaintiff's proofs, the defendant moved for a directed verdict on the ground that the deceased was guilty of contributory negligence in not leaving the cart and getting himself out of danger. This the court denied. When both par-

ties had rested, the plaintiff requested the court to direct the jury to return a verdict in his favor, claiming that under the proofs the defendant was guilty of negligence and the plaintiff free from contributory negligence, as matters of law. The court submitted both questions to the jury, who found in favor of the defendant. He also overruled plaintiff's motion for a new trial, in which was included his claim that the verdict was contrary to the weight of the evidence, and entered a judgment for defendant from which plaintiff appeals

1. Negligence of Defendant. Plaintiff's counsel insists that defendant's motorman was negligent in not seeing deceased until within 114 feet of him, in driving the car at its maximum speed, in neglecting to have it so under control that it could have been stopped within his range of vision, and in failing to make an effort to stop until so close to deceased that it was impossible to do so. He insists that he was entitled to have the jury so instructed under the rule laid down in *Wingert* v. *Railway,* 177 Mich. 199. We think such an instruction would have been erroneous in view of the testimony of the defendant's witnesses. The motorman testified that he was driving at from 12 to 15 miles per hour, that when he first saw deceased he was "a little over half a block" away, that he supposed he was crossing the street, that he rang the gong and when he saw deceased was staying on the track and had something ahead of him he "put the air on and the car skidded." That when a car starts to skid "it gains speed." That the cart was practically off the track when deceased was struck. We are of the opinion that an issue of fact for the jury to pass upon was thus presented.

2. Contributory negligence of Deceased. Defendant's counsel urge that under the proofs the deceased was guilty of contributory negligence as a matter of

law, while plaintiff's counsel insists that the jury should have been instructed to the contrary. It is apparent that deceased could have gotten into a place of safety with his cart were it not for the obstruction caused by the ridge of ice or snow. He had sufficient time to do so after he heard the gong of the approaching car had he turned to the left where no such obstruction existed. Whether or not, when he found the obstruction interfered with his pushing his cart off the track, it was his duty under the circumstances to himself step out of danger, clearly raised a question of fact for the jury, if it did not entitle defendant to the instruction asked for. See *Levy* v. *Railway Co.*, 164 Mich. 572; *Redson* v. *Railroad Co.*, 120 Mich. 671; *Frost* v. *Railroad Co.*, 96 Mich. 470; *Lyons* v. *Railway Co.*, 115 Mich. 114.

3. Charge of the Court. Many errors are assigned on the refusal of the court to give plaintiff's requests. There were 29 of them presented. They cover more than 8 pages of the printed record. When applicable to the proofs submitted, it was the duty of the trial court to give them or to so instruct the jury in substance in his own language in order to inform them of the law which they must apply to the facts as they should find them. Many of these requests are quotations from opinions of this court and text-book writers and correctly state propositions of law governing this class of cases. But it is, we believe, the practice of most trial judges to examine the requests and to state the substance of those which he thinks should be given in his own language. Such practice has been approved by this court. *Miller* v. *Sharp*, 65 Mich. 21.

It therefore becomes necessary to examine the charge as a whole to ascertain whether the claims of the plaintiff were fairly presented to the jury. As preliminary it may be said that while the deceased was entitled to use that part of the street occupied by

defendant's track, he was chargeable with knowledge of the fact that the ridge of snow and ice had been formed outside the east rail which might render it difficult for him to quickly remove his cart therefrom. We do not feel justified in quoting all of the requests or the entire charge, but will refer to those on which plaintiff's counsel apparently most strongly relies. The 5th request reads:

"I charge you that street railway companies do not possess an exclusive right to that portion of the highway covered by their tracks, but the ordinary traveler has a right to use every portion of the highway, including the space between the rails, until it becomes necessary for him to yield the track to the cars."

This language is a quotation from the opinion in *Ablard* v. *Railway,* 139 Mich. 248. The sentence following reads:

"In using the track of the street railway company, however, it is the duty of the traveler to keep in mind the fact that cars will be likely to follow and overtake him, and to maintain such a reasonable watchfulness for the approach of a car as, *under the circumstances of the particular case,* an ordinarily prudent man would."

In charging as to the duty of the deceased, the court, after stating the facts, said:

"All that is required is that he should act as an ordinarily prudent man would under those circumstances. * * * In order to determine that you must consider the character of the night, the temperature, the character of the pavement, the necessity of the work he was engaged in, and why he was there generally. The evidence shows that he was out getting coal from a house that he had occupied, with the purpose of carrying that coal to the house that he was about to occupy; and the evidence shows you something in regard to the character of the pavement and what the weather had done to that pavement; the necessities of the case and those things. You can take into consideration all those things in showing

211—Mich.—17.

whether or not, when he was moving along upon the railroad track, pushing this hand cart, on this particular night, with conditions as they were, whether he was acting the part of an ordinarily prudent man or otherwise."

The purpose of a charge is to state the rules of law which the jury should apply to the facts as they may find them, and may always have in view the claims of the parties. From abstract propositions they get little benefit. It is apparent, and the trial court so states in his reasons for denying the motion for a new trial, that no question of the right of the deceased to push his cart along between the rails of defendant's track was raised by the defendant. He said:

"It must be assumed that where there is no denial of the right of a pedestrian to walk in and upon the track of the street railway company, and it is argued to them vigorously by the counsel for plaintiff that he has such a right, that the jury need no further information on that point."

While he had the abstract right to use the tracks, whether or not, in view of the condition in which the track was and the presence of the ridge of snow and ice near the rail, it was prudent for him to do so, was a question for the jury. Several of the other requests embodied the same rule of law, but were couched in somewhat different language.

Plaintiff's 9th request reads:

"I charge you that Mr. Dziwak was not bound to take into consideration that the car which struck him might be run at such reckless rate of speed that it could not be stopped within the motorman's range of vision."

There was a sharp conflict in the testimony as to the rate of speed at which the car was traveling. The motorman and conductor both testified that it was not running more than 15 miles per hour. This request

infers that the rate of speed was reckless. It also loses sight of the fact that the reason assigned by the motorman why he did not sooner make an effort to stop was because he did not know deceased was pushing a cart and expected him to step off when he heard the sound of the gong. The jury were instructed:

"If you believe that the motorman did all that a reasonably prudent motorman would have done under similar circumstances, that the car skidded and on that account he was not able to stop it, I charge you on this account that the defendant would not be negligent."

We think such instruction a correct statement of the law applicable to the proofs and that the request was properly refused. What has been said also applies to plaintiff's 8th and 11th requests.

Error is assigned on the following portion of the charge:

"There was no duty incumbent upon the motorman to stop his car, or take measures so to do until he saw that the plaintiff was not going to get off the track, or was in such a position that he could not get off the track in time to avoid being struck."

Counsel fails to distinguish between a team and wagon on the track and a pedestrian. It takes time to remove the former, but the latter by a step or two can place himself in a position of safety. Were motormen required to prepare to stop every time a man appeared on the track, cars would make little progress and there would be no such thing as rapid transit. They are not bound to anticipate that a pedestrian will not step off or to be prepared for a contingency so unlikely to happen. See *Griewski* v. *Light Co.*, 209 Mich. 10, and cases therein cited.

While some of plaintiff's requests might well have been given, we are called on to determine whether, taking the charge as a whole, the claims of the parties

and the law applicable thereto were fairly presented to the jury. The trial judge hears the arguments of counsel. He is thus advised as to the questions really in dispute and on which the rights of the parties depend. After a careful reading of the entire record, which fully discloses the claims of the respective parties, and the evidence in support thereof, we feel constrained to hold that the jury were properly instructed on the issues material to their decision of the facts in dispute.

4. Motion for a New Trial. We think the trial judge was justified in denying this motion. As has been said, there was much conflict in the testimony on several of the issues presented. We cannot conclude as a matter of law that the verdict was so contrary to the weight of the evidence as to warrant this court in setting it aside.

Finding no reversible error in the record, the judgment is affirmed.

MOORE, C. J., and STEERE, BROOKE, FELLOWS, STONE, CLARK, and BIRD, JJ., concurred.