## JACKSON v. CAPITAL TRANSIT CO.
### No. 7054.

United States Court of Appeals for the District of Columbia.

Decided July 25, 1938.

Reargument Denied Oct. 13, 1938.

William Alan Lowe and Dorsey K. Offutt, both of Washington, D. C., for appellant.

Edmund L. Jones, H. W. Kelly, G. Thomas Dunlop, and S. R. Bowen, all of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and MILLER, Associate Justice, and PROCTOR, Associate Justice of the District Court of the United States for the District of Columbia.

MILLER, Associate Justice.

This appeal is from a judgment entered upon a directed verdict in favor of appellee (defendant below), in an action brought by appellant, as administratrix of the estate of Franklin C. Jackson, to recover damages suffered by reason of his death. The accident, out of which the alleged cause of action arose, occurred about noon, January 9, 1935, when decedent, while at-

tempting to cross Fourteenth Street between L Street and Thomas Circle, N. W., in the City of Washington, D. C., was struck by a street car owned and operated by appellee.

■ As appellant's action is founded upon negligence, the burden was on her to establish appellee's negligence by a preponderance of evidence. Kelly Furniture Co. v. Washington Ry. & Elec. Co., 64 App.D.C. 215, 76 F.2d 985. However, on a motion for a directed verdict, it is well settled that the evidence must be construed most favorably to the plaintiff; to this end he is entitled to the full effect of every legitimate inference therefrom. If upon the evidence, so considered, reasonable men might differ, the case should go to the jury; if, on the other hand, no reasonable man could reach a verdict in favor of the plaintiff, the motion should be granted.[1] A mere scintilla of evidence is not sufficient for this purpose, however. The question is not whether there is any evidence "but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Pleasants v. Fant, 22 Wall. [U.S.] 116, 121, 22 L.Ed. 780.[2] The burden being upon the plaintiff "to establish the negligence and injury alleged; * * * if the evidence failed adequately to support either element, defendant's motion should have been granted." Gunning v. Cooley, 281 U.S. 90, 95, 50 S. Ct. 231, 233, 74 L.Ed. 720.[3] The practice of directing verdicts when there is only a scintilla of evidence "not only saves time and expense, but 'gives scientific certainty to the law in its application to the facts and promotes the ends of justice.'" Pennsylvania R. R. v. Chamberlain, 288 U.S. 333, 343, 53 S.Ct. 391, 394, 395, 77 L.Ed. 819.

■ Appellant, in her declaration, based her claim upon the theory that appellee failed to keep a proper lookout, sound a warning signal, operate the car at a lawful rate of speed, and "failed to keep said street-car under such emergency control as to be able to stop when it saw by and through its agents, servants and/or employees, or one of them, or by the exercise of reasonable care and prudence, should have seen the plaintiff in a position of peril, and failed to stop said street-car * * *." At the trial and on appeal several of these contentions were abandoned. Thus, there is now no contention that the motorman did not sound his gong or ring his bell. Appellant's witness White testified on this point: "The steady clanging of the street car bell first attracted her attention to the situation and it kept clanging up to the moment of the accident." In fact, appellant not only does not deny that this warning was given but relies on it to prove that the motorman was aware of deceased's danger and of the fact that deceased was oblivious of his danger. There is, moreover, no contention that deceased had the right of way. It is conceded that he was crossing at a point not a street intersection. Even at an intersection a street car has a preferential right of way, and it is the duty of a pedestrian to exercise reasonable care to get off or keep off the track until the car passes. Kelly Furniture Co. v. Washington Ry. & Elec. Co., 64 App.D.C. 215, 217, 76 F.2d 985, 987.

There is no evidence to support the contention that the car was going at an excessive rate of speed, or that it was out of control. The only testimony upon this point was given by appellant's witnesses. Witness Simms testified that the street car was traveling at the rate of seven or eight miles an hour until it slackened speed three

---

[1] Schwartzman v. Lloyd, 65 App.D.C. 216, 82 F.2d 822; Fleming v. Fisk, 66 App.D.C. 350, 87 F.2d 747; Lyons v. Liberty National Bank, 67 App.D.C. 14, 89 F.2d 486; Faucett v. Bergmann, 57 App.D.C. 290, 22 F.2d 718; Boosalis v. Crawford, 69 App.D.C. 141, 99 F.2d 374, decided July 18, 1938.

[2] In the present case the motion for a directed verdict was made at the close of plaintiff's evidence. Of course, if it had been made at the close of all the evidence plaintiff could have relied, also, upon any evidence produced by the defendant.

[3] See, also, Chr. Heurich Brewing Co. v. McGavin, 56 App.D.C. 389, 391, 16 F.2d 334, 336, and cases there cited; Slocum v. New York Life Ins. Co., 228 U.S. 364, 369, 33 S.Ct. 523, 57 L.Ed. 879, Ann.Cas.1914D, 1029; Baltimore & Ohio R. R. v. Groeger, 266 U.S. 521, 524, 45 S.Ct. 169, 170, 69 L.Ed. 419; Small Co. v. Lamborn & Co., 267 U.S. 248, 254, 45 S.Ct. 300, 303, 69 L.Ed. 597; Pennsylvania R. R. v. Chamberlain, 288 U.S. 333, 343, 53 S.Ct. 391, 394, 77 L.Ed. 819.

or four feet before striking decedent, went three feet farther and stopped. Witness White testified that when the car was about half a block from the point of the accident it was going about ten or twelve miles an hour; the motorman slowed the car and "when he got a distance of six feet away he slowed down slower and was real slow almost a walking speed * * * and when the car hit him it stopped instantly." Witness Jacobson testified that "When the street car was four or five feet away Decedent was probably two steps from the track. That when Decedent stepped on the track the street car was not over one or two feet away from him and that the car stopped within a distance of one or two feet after the accident." In Kelly. Furniture Co. v. Washington Ry. & Elec. Co., supra, we said:

"Here there was no real evidence that the street car was operated at an unreasonable speed or that it failed to give warning of its approach. The testimony of Muir, that *the car ran only five feet* after the accident, indicates it was not running at immoderate speed * * *." [Italics supplied] 64 App.D.C. at pages 217–218, 76 F. 2d at pages 987–988.

■ One operating a street car in a lawful manner, and giving proper and sufficient warning signals of its approach, may assume that a pedestrian upon, or drawing near to, the track will respect the preferential right of the street car, and have sufficient care for his own safety, to take notice and leave the track, or stop and let the car pass;[4] although this assumption may be indulged only until something appears which makes it evident, or by the exercise of diligence should make it evident, to the operator that the pedestrian is in a position of peril and that to proceed will result in a collision.[5]

■ The sole issue of the case, therefore, may be stated in the following question: Was there evidence to show that (1) the deceased was in a position of danger; (2) he was oblivious of his danger; (3) the motorman was aware, or by the exercise of reasonable care should have been aware, of deceased's danger and obliviousness; (4) the motorman was able to stop the car and avoid striking the deceased after he became aware, or should have become aware, of this danger and obliviousness and failed to do so? If so, then the case should have gone to the jury. If not, the decision of the lower court was correct and must be affirmed. Washington Ry. & Elec. Co. v. Cullember, 39 App.D.C. 316, 323; Capital Traction Co. v. Divver, 33 App.D.C. 332, 336.

That deceased was in danger of death is obvious from the fact of his death. Substituting hindsight for foresight, it is easy to assume that he was oblivious of his danger. But what his state of mind actually may have been is entirely unrevealed by the record. Appellant's witnesses testified concerning deceased's actions at the point of the accident as follows:

Simms:

"* * * Decedent * * * [was] walking west at ordinary speed leaving the east curb of 14th Street from a point about ten feet south of an alley which was about even with the north end of a safety zone. * * * Decedent walked diagonally in a westerly direction * * * without turning his head to his left or to his right at any time before he was struck and did nothing to indicate that he intended to stop before he crossed the street. * * * When Decedent stepped on the east rail of the northbound track the street car was just south of the safety zone. Decedent was half way between the two rails of the northbound track when the street car struck him."

Jacobson:

"* * * Decedent did not look to the right or to the left and was walking at a right angle to the car just behind the end of the safety zone. When the street car

4 Washington Ry. & Elec. Co. v. Upperman, 47 App.D.C. 219, 228; Jensen v. Utah Light & Ry. Co., 42 Utah 415, 424–425, 132 P. 8, 12; Kramm v. Stockton Elec. R. Co., 10 Cal.App. 271, 101 P. 914; Lackey v. United Rys. Co., 288 Mo. 120, 231 S.W. 956; Burns v. Rhode Island Co., R.I., 110 A. 378; Roanoke Ry. & Elec. Co. v. Carroll, 112 Va. 598, 72 S.E. 125; Alabama Power Co. v. Bass, 218 Ala. 586, 592, 119 So. 625, 630, 63 A.L.R. 1; Haffey v. Metropolitan St. Ry. Co., 154 Mo.App. 493, 495, 135 S.W. 987–988.

5 Capital Traction Co. v. Apple, 34 App.D.C. 559, 574; Birmingham Ry., Light & Power Co. v. Williams, 158 Ala. 381, 48 So. 93; Jensen v. Utah Light & Ry. Co., Lackey v. United Rys. Co., both supra note 4; Ford's Adm'r v. Paducah City Ry., 124 Ky. 488, 99 S.W. 355, 8 L.R.A.,N.S., 1093, 124 Am.St.Rep. 412.

was four or five feet away Decedent was probably two steps from the track. That when Decedent stepped on the track the street car was not over one or two feet away from him and that the car stopped within a distance of one or two feet after the accident."

White:

"* * * Decedent was standing by the side of the track as the street car came up and the car was running slowly and the motorman sounded his gong and just as the front of the street car reached Decedent, he made a step forward towards the track right in front of it just like he was going across the track and when the car hit him it stopped instantly."

■ At most the record gives us no more than a scintilla of evidence upon which to base a surmise that the motorman was aware, or should have been aware, either that deceased was in danger or oblivious of his danger. It is a matter of common knowledge that pedestrians take all manner of liberties with traffic regulations and that traffic is timed upon the assumption that they will stop or continue ahead and get clear of the oncoming automobile or street car. In fact—as has been frequently said in the cases—street car traffic could not be maintained in crowded cities on any other assumption.[6]

■■ Appellant contends that the clanging of the gong by the motorman revealed his knowledge of deceased's danger and obliviousness. But it is a matter of common knowledge that street car motormen clang their gongs almost constantly while going through crowded city streets; especially when any vehicle or person comes upon or approaches a street car right of way. Except to the extent that the word danger may properly be used generically to describe the condition of all pedestrians on city streets, it cannot be said that a motorman by clanging his gong, without more, indicates his knowledge that such a pedestrian is in danger. In the present case, moreover, the fact that the car was approaching a safety zone, in which passengers customarily wait, was a sufficient reason in itself for the clanging of the gong. If there had been any evidence of incapacity or demeanor to suggest that deceased was oblivious of danger, the result might be different. The presumption is—in the absence of such factors—"that a grown man is aware of his surroundings."[7] If the deceased had been lying, or sitting, or stooping down, or even standing, between the tracks, it might have suggested danger and obliviousness;[8] if he had been a cripple,[9] or pushing a cart,[10] or moving mail bags;[11] if he had been staggering or stumbling, or groping or tapping with a cane; if he had been a child, or if the motorman should have seen that he was in distress—as where a person had caught his foot between the rails[12]—and had failed to slacken speed and to give warning;[13] then, under any of such circumstances, there might have been a case to go to the jury.

Instead, the evidence shows that deceased was a man of mature age; the accident occurred about noon and the visibility was good; there was no intervening traffic; there was a safety zone between deceased and the car track, as he approach-

[6] "* * * ordinarily a motorman rests under no obligation to stop his car merely because he sees a pedestrian approaching the track. The foot-man is in a place of safety. He has absolute control of his movements and can stop instantly, and it is reasonable to assume that he will stop and wait for the car to pass, and not attempt to cross immediately in front of it. * * * It would be impossible to operate street cars in a city on any other theory." Roanoke Ry. & Elec. Co. v. Carroll, 112 Va. 598, 603, 72 S.E. 125, 127. See, also, Duteau v. Seattle Elec. Co., 45 Wash. 418, 420, 88 P. 755. 756; Bloch v. Detroit United Ry., 211 Mich. 252, 259, 178 N.W. 670, 672.

[7] Haffey v. Metropolitan St. Ry. Co., 154 Mo.App. 493, 495, 135 S.W. 987, 988.

[8] Draper v. Dunham, Mo.App., 239 S. W. 883, 885; Kathmeyer v. Mehl, N.J. Sup., 60 A. 40; Capital Traction Co. v. Divver, 33 App.D.C. 332, 336.

[9] Birmingham Ry., Light & Power Co. v. Williams, 158 Ala. 381, 389, 48 So. 93, 96.

[10] Bloch v. Detroit United Ry., supra note 6.

[11] Jensen v. Utah Light & Ry. Co., supra note 4.

[12] McDermott v. Severe, 25 App.D.C. 276.

[13] Bremmerman v. Georgetown & T. Ry. Co., 50 App.D.C. 378, 273 F. 342; Washington Ry. & Elec. Co. v. Buscher, 54 App.D.C. 353, 298 F. 675; Standard Oil Co. v. McDaniel, 52 App.D.C. 19, 280 F. 993.

ed the track; and he either crossed the safety zone or passed two feet north of its north end—farthest away from the approaching car. There was no evidence to show that deceased was deaf, or blind, or suffering from any physical or mental defect which contributed in any way to the accident—much less which was calculated to inform the motorman of disability, danger, or obliviousness of danger. The evidence showed that deceased was carrying a cane and a package of meat, but there was no contention that this incapacitated him in any way. So far as the evidence shows, and so far as the motorman had any reason to believe, the deceased was a perfectly competent person, proceeding confidently on his way across the street, just as hundreds of other pedestrians do every day upon the streets of Washington. Under these circumstances the motorman had a right to assume that the pedestrian knew of the preferential right of way of the street car and that he would either stop before he reached the zone of danger or would cross and get out of the way.

There is no evidence that after the motorman saw, or should have seen, that the striking of deceased was inevitable, he failed to do anything which, in the exercise of reasonable care, he should have done to avoid it. Kelly Furniture Co. v. Washington Ry. & Elec. Co., 64 App.D.C. 215, 218, 76 F.2d 985, 988. Instead, the evidence showed that the car was going very slowly; the gong was clanging continuously; the deceased was walking confidently forward; and that the car was stopped "instantly" or at most within two or three feet of the point of impact. In the absence of a showing that the motorman was lacking in attention to his duties, or that he had not his car within control,' or that he was driving at an excessive rate of speed, "To apply the doctrine of last clear chance to the facts in this case would be to impose a duty upon the motorman impossible of accomplishment." Washington Ry. & Elec. Co. v. Chapman, 62 App.D.C. 140, 141, 65 F.2d 486, 487, certiorari denied, 290 U.S. 661, 54 S.Ct. 75, 78 L.Ed. 572.

In our opinion, the evidence failed completely to support appellant's contentions. The motion for a directed verdict was, therefore, properly granted.

Affirmed.