**CAPITAL TRANSIT CO. v. HOLLOWAY.**

No. 159.

Municipal Court of Appeals for the
District of Columbia.

Jan. 26, 1944.

R. E. Lee Goff, of Washington, D. C.,
with whom Bowen & Kelly, of Washington,
D. C., were on the brief, for appellant.

Thomas H. Patterson, of Washington,
D. C., for appellee.

Before RICHARDSON, Chief Judge,
and CAYTON and HOOD, Associate
Judges.

CAYTON, Associate Judge.

This appeal concerns a type of automobile collision which happens with great frequency—one between a motorist pulling away from a parked position at the curb and colliding with a vehicle in a lane of through traffic. Here such a motorist was plaintiff and sued the defendant transit company for damages allegedly caused by one of its buses. Trial was by the court and resulted in a finding for plaintiff. We are ordering a reversal on the sole ground that plaintiff's own testimony showed him to have been negligent.

The important parts of plaintiff's testimony were these: On February 14, 1943, between 5 and 5:30 p.m. his car had been parked just south of Macomb Street, facing south on Connecticut Avenue. After assisting a lady into his automobile he walked around to the left or driver's side, looked to the rear, northward along Connecticut Avenue and saw no vehicles coming. He got into the driver's seat, switched on his headlights and signal lights, again looked to his rear, and again did not see the bus or any other vehicle approaching—although vehicles could ordinarily be seen 200 to 300 feet up Connecticut Avenue from that point. He did not recall whether he gave a hand signal before pulling away from the curb. As he put his car into motion and when his right front wheel was 3 feet from the curb, the collision occurred. He did not see the bus until the time of the collision. The lights of the bus were not on and it did not stop until it was an estimated distance of some 200 feet away.

Plaintiff's wife testified in his behalf and the operator of the bus and two other witnesses gave evidence in behalf of the defendant. But in view of what we are about to say, it is unnecessary to discuss their testimony.

We think we should make it plain that a motorist pulling away from a parked position must be alert to recognize that automobiles, buses or other vehicles are likely to be travelling the through lanes. We hold that such through traffic has the right of way, and that such would be the law of the road even without Traffic Regulation

27A which provides: "The driver of any vehicle intending to draw out from the curb or from any parking space shall indicate such intention by extending the hand and arm horizontally from and beyond the left side of the vehicle, *and shall not draw out in such manner as to interfere with moving traffic approaching from either direction."* (Italics ours.)

A different rule would, we think, produce a chaotic condition. It would make every parked vehicle a highly dangerous threat to the public safety and cast upon operators of vehicles in through traffic an unreasonable burden of care.

■ We hold further that to meet the standards of ordinary care, one operating an automobile from a parked position is held to a high degree of continuing vigilance. He may not "draw out in such manner as to interfere with moving traffic." He is under a duty to look and see that which is in plain view. He will not be heard to say that he looked and did not see that which was there to be seen. For if he looked, and failed to see a vehicle which. was plainly visible, he is bound to the same extent as if he had seen it.[1] And as we have already said, if he had seen the bus where it was, he could not in the exercise of ordinary care have driven into the path of immediate and obvious danger.

■ Judged by these standards we think the trial judge drew an erroneous conclusion of law from plaintiff's testimony, in failing to hold that he was negligent and that such negligence was a proximate and efficient, or at least a contributory cause of his damage.

■ We are told that the lights of the bus were not on and that this prevented plaintiff from seeing it. Also it is said that at the time it was "dusk". As against this vague statement, we take judicial notice that on that day the sun did not set for more than an hour after the time of the collision.[2] Nor is there anything in the record concerning any unusual weather conditions which might have affected visibility or excused plaintiff's failure to see the bus.

Our attention is directed also to plaintiff's testimony that the bus was travelling at 40 miles per hour, but it seems to us that there is little probative value in that estimate, in view of plaintiff's admission that he did not see the bus until the time of impact.

As before stated we are not concerning ourselves with the factual disputes in the case, or even indirectly attempting to resolve the conflicts in the evidence. We rest our decision upon the testimony of plaintiff himself.

Reversed.

[1] Cronin v. Shell Oil Company, 8 Wash. 2d 404, 112 P.2d 824; Dee v. City of Peru, 343 Ill. 36, 174 N.E. 901; McLean v. Continental Baking Company, 9 Wash.2d 176, 114 P.2d 159; Nickerson v. Barber, 135 Me. 508, 191 A. 901; Johnson v. Herring, 89 Mont. 156, 295 P. 1100. In our own jurisdiction Faucett v. Bergmann, 57 App.D.C. 290, 22 F. 2d 718, is to the same general effect, though the opinion does not employ the express words we have used.

[2] The official records of the U. S. Department of Commerce, Weather Bureau, recite that on the day in question the sun set at 6:44 p. m., War Time.