## BROWN et al. v. CLANCY.

### No. 293.

Municipal Court of Appeals for the District of Columbia.

July 27, 1945.

Paul J. Sedgwick, of Washington, D. C., for appellant.

John F. Cooney, of Washington, D. C., for appellee.

Before RICHARDSON, Chief Judge, and CAYTON and HOOD, Associate Judges.

RICHARDSON, Chief Judge.

This appeal involves a collision between automobiles at a street intersection. Trial by the court without a jury resulted in a finding and judgment for plaintiff; defendants have appealed. Each party claims the other was negligent.

Defendant Brown's truck, operated by defendant Epps, was being driven west on

---

[2] Citing Edson v. Harper Motor Co., 56 App.D.C. 241, 12 F.2d 182; National Safe Deposit Co. v. Hibbs, 32 App.D.C. 459.

R Street, a one-way thoroughfare for westbound traffic. Plaintiff, driving a large sedan, approximately 20 feet in length, described as a type used for sight-seeing, was proceeding north on 17th Street. His testimony was that at the intersection of R Street he stopped 10 feet back of the curb line in obedience to a flashing red light.[1] He looked for traffic approaching on his right, saw no moving vehicle, started his car and proceeded to cross. At the center of the intersection he saw defendants' truck 25 to 30 feet away. A second later the front of the truck struck the right side of his car about the center and damaged the door and rear fender. His car continued across the intersection; defendants' truck stopped at the point of impact. Plaintiff further stated that when he stopped to look for traffic approaching on R Street he could see to his right, a distance of about 80 feet. When asked to fix the distance objectively he said that it was about three times the length of the court room. As the latter is 77½ feet in length this would indicate a distance of approximately 250 feet. The collision occurred on a clear day. There was no other moving traffic on either street, and no parked cars except on the north side of R Street. There was no evidence that plaintiff's view of the street to his right was obstructed and no claim was made that the truck was driven at an excessive speed.

Plaintiff produced the only eyewitness to the collision, a lawyer, who testified that he was standing on the southeast corner of the intersection and saw plaintiff's car come to a stop 10 or 12 feet south of the intersection. Quoting the record: " * * * he turned with it as it started from its stopped position and at the same moment he observed defendants' westbound truck fifty feet east of the intersection approaching at a speed which he estimated to be 20 to 25 miles an hour; he sensed a collision was about to happen; that in about two seconds the collision occurred * * *."

Plaintiff also produced as a witness a police officer who arrived shortly after the accident. He testified that he observed tire marks 6 or 7 feet in length in the east crosswalk of 17th Street. He saw no marks indicating an application of brakes by plaintiff's car. Plaintiff stated to him that his rate of speed was 10 miles per hour.

The defendant driver testified that his truck was on the right side of R Street between the center line and cars parked on the north side of the street. He was driving about 20 miles an hour. As he drew near 17th Street he looked to his right and saw no southbound traffic; he looked to his left and saw plaintiff's vehicle 10 feet south of the curb line of R Street. He assumed plaintiff would yield the right of way but when the latter continued on into the intersection he applied his brakes. The front of his truck was practically stopped, almost at the center line of 17th Street, when plaintiff's car swept across in front of him damaging its right side from the right front fender back to the right rear fender. The truck sustained no damage. It remained stationary with the front near the center line of 17th Street, and plaintiff's car continued north out of the intersection.

Ordinarily questions of negligence and contributory negligence are for decision by a jury, or trial court sitting without a jury. But where the facts clearly appear from the undisputed evidence, where they are such that, conceding every legitimate inference, but one reasonable conclusion may be drawn, the issue is one of law for the court.[2] This, we think, is determinative of the present case on the issue of plaintiff's contributory negligence.

The driver of an automobile who, on arriving at an intersection, is confronted by a stop signal, must exercise a degree of care measured by the requirements of the traffic regulations [3] and the dictates of common sense. He must stop his car before

---

[1] Traffic Regulations (Part I, Article II, Section 4(a) provides: "Flashing red or 'Stop'—When a red lens is illuminated by rapid intermittent flashes, drivers of vehicles shall stop before entering the nearest crosswalk at an intersection or at a limit line when marked and the right to proceed shall be subject to the rules applicable. after making a stop at a stop sign."

Section 28(b) provides: "At any point at which an official 'Stop' sign has been erected all vehicles shall come to a complete stop and shall yield to other vehicles within the intersection or approaching so closely thereto as to constitute an immediate hazard * * *."

[2] Tobin v. Pennsylvania R. Co., 69 App. D.C. 262, 100 F.2d 435; McWilliams v. Shepard, 75 U.S.App.D.C. 334, 127 F.2d 18; Towles v. Arcade-Sunshine Co., Inc., D.C.Mun.App., 32 A.2d 870; Capital Transit Co. v. Holloway, D.C.Mun.App., 35 A.2d 649.

[3] Ross v. Hartman, 78 U.S.App.D.C. 217, 139 F.2d 14.

entering the favored street, observe moving traffic, and give the right of way to an approaching vehicle which "would constitute an immediate hazard." By the latter, we think, was intended a vehicle so close to the intersection that, should it continue with undiminished speed and should the unfavored vehicle start, the two would reach the point where their paths would converge at approximately the same time.

He may not merely look—he must look observantly and with effect. And if he fails to see what the evidence conclusively shows is there to be seen, the law imposes a penalty for his lack of care—it declares him contributorily negligent and bars recovery for his injuries.[4]

"When a litigant has a duty to look and testifies that he did look but did not see what was plainly to be seen, such ineffectual looking has no more legal significance than if he had not looked at all."[5]

Under the Nebraska statute in substantially the words of our traffic regulations, it was said: "To hold otherwise would permit one to ignore the rules of the road as to right of way with impunity and render valueless the beneficent purpose of the right of way statute by the mere expedient of saying that he did not see the approach of the favored car."[6]

In 2 Blashfield's Cyclopedia of Automobile Law and Practice, Perm.Ed., pp. 223–225, § 1037, we find it stated: "The duty is, indeed, not merely one of looking, but is one of observation, * * * he must look in such an intelligent and careful manner as to enable him to see what a person in the exercise of ordinary care and caution for the safety of himself and others could have seen, under like circumstances."

Here plaintiff, from a point 10 feet back of the curb line, when the truck was nearing the intersection, 50 feet away, by the testimony of plaintiff's own witness and approaching at 20–25 miles an hour, started his car and proceeded to cross. There is no evidence of any obstruction to his view of the street to his right. He admitted that from where he stopped he could see in that direction a distance of approximately 250 feet. When he was in the intersection he saw the truck 25 or 30 feet away. Yet he says he did not see it when he looked before starting.

We think that to reasonable minds the conclusion is inescapable that the truck was so close that it was well within plaintiff's range of vision when he looked and failed to observe it. The uncontradicted evidence of the reasonable rate of speed at which the truck was driven, its physical presence in the intersection in collision with plaintiff's automobile, the fact that as plaintiff started his car toward the intersection his own witness saw the truck so close that he realized instantly there would be a collision, all combine to exclude any other reasonable explanation of the incident.

We, therefore, hold that the trial court erred in not sustaining the plea of contributory negligence.

Reversed.

4 Capital Transit Co. v. Holloway, supra. See also Carlin v. Haas, 124 Conn. 259, 199 A. 430; Gregware v. Poliquin, 135 Me. 139, 190 A. 811; Zuidema v. Bekkering, 256 Mich. 327, 239 N.W. 333; Gallagher v. Walter, 299 Mich. 69, 299 N. W. 811; Cramer v. Brictson, 286 Mich. 224, 281 N.W. 601; Hermanson v. Switzer, 188 Minn. 455, 247 N.W. 581; Whitaker v. Keogh, 144 Neb. 790, 14 N.W.2d 596; Moore v. Vick, 181 Va. 157, 24 S. E.2d 429; Hefner v. Pattee, 1 Wash.2d 607, 96 P.2d 583; Pettera v. Collins, 203 Wis. 81, 233 N.W. 545. The rule as to pedestrians is the same, Faucett v. Bergmann, 57 App.D.C. 290, 22 F.2d 718.

5 Orr v. Hensy, 158 Kan. 303, 147 P.2d 749, 752.

6 Whitaker v. Keogh, supra [144 Neb. 790, 14 N.W.2d 599].