**Carl S. LONG and Kemp Cab Corporation, Appellants,**

**v.**

**Gladys T. MERCER, Appellee.**

No. 1858.

Municipal Court of Appeals for the District of Columbia.

Argued Aug. 27, 1956.

Decided Oct. 12, 1956.

·J. Lawrence Hall, Washington, D. C., for appellants.

Foster Wood, Washington, D. C., for appellee. .;

Before ROVER, Chief Judge, QUINN, Associate Judge, and CAYTON (Chief Judge, Retired) sitting by designation under Code, § 11–776(b).

ROVER, Chief Judge.

Plaintiff recovered a verdict of $1,500 against defendants for personal injuries sustained when she was struck by a taxicab operated by defendant Long. The accident occurred on September 6, 1955, at about 8 o'clock in the evening when plaintiff was crossing Pennsylvania Avenue at its intersection with Tenth Street, N.W., in this city. According to the plaintiff's testimony, she and two companions had started walking from north to south in the east crosswalk while the traffic light controlling their passage was green. The light changed to amber when they reached the eastgoing, or south, streetcar rails on Pennsylvania Avenue. There being no traffic safety island at that point, they "kept on going to try to get to the sidewalk," although the signal had changed to red against them. Plaintiff testified that she saw that three cars in the eastbound lane of traffic had started moving; that the motorists in the two lanes nearest the streetcar tracks had stopped their vehicles before reaching the crosswalk to let them pass; but that the cab driven by Long, in the farthest lane did not stop for their passage, striking her when she was six or seven feet from the curb. On cross-examination plaintiff said that after she had passed the first two cars she had looked to her right but "saw nothing

coming" and did not see the taxicab until it was "just a couple of feet away."

The taxicab driver testified he had stopped his vehicle for the traffic signal "right next to the curb," the lead car in his lane, heading east on Pennsylvania Avenue and that he noticed two (on cross-examination) or three (on direct examination) cars in eastbound lanes to his left. When his light changed to green, he testified that he saw the other cars move forward and that he did also, attaining a speed of about 15 miles per hour. He did not see plaintiff, according to his testimony, until "she was about even with the right front fender" of his cab. He applied his brakes and veered slightly to his left but could not avoid striking her while in the crosswalk.

Both at the conclusion of the plaintiff's case and at the close of the defendants', the latter's motions for directed verdicts, on the ground that plaintiff had been contributorily negligent as a matter of law, were denied. This is assigned as error.

Defendants concede, as they must, that the plaintiff, having started to cross on a green light, had the right of way to continue to the opposite corner even though the signal had meanwhile changed to red. Their contention is that plaintiff failed to exercise reasonable care for her own safety after the light had changed to red against her, and that this was a contributing cause of the accident. They point to her testimony that she looked to her right but failed to see the taxicab until it was two or three feet away from her. It is urged that plaintiff had a duty under the circumstances to look to her right and to do so observantly and with effect; that is to see what was there to be seen, citing Faucett v. Bergmann, 57 App. D.C. 290, 22 F.2d 718. The determination in that case however rested on a factual pattern quite different from ours. There the pedestrian was walking across the street in broad daylight, outside the corner crossing at some distance; and the street, except for pedestrian and vehicle, was otherwise clear of traffic. In this case, the

plaintiff described the time of day as dusk and Long testified that the street lights as well as his head lamps were lighted. The plaintiff was within the crosswalk and the lanes were full of vehicles. It is a reasonable inference that with conditions prevailing such as approaching nightfall and the crowded traffic in the path of plaintiff's vision, and with the additional factors that she had to watch her footing while proceeding to a point of safety and that other cars had already come to a halt to permit her to complete her crossing, the plaintiff became aware of defendants' taxicab as soon as could be expected of any reasonably prudent person. Though watchfulness in several directions was required of plaintiff for her own safety, the fact that she did not see the taxicab although it "was there to be seen" does not, conceding every legitimate inference from the evidence to the plaintiff, indicate contributory negligence as a matter of law. Language more applicable now than it was then on a very similar set of facts, reinforces our view that the issue of plaintiff's contributory negligence was properly submitted to the jury. Griffith v. Slaybaugh, 58 App.D.C. 237, 29 F.2d 437, 439. There it was said:

"The condition of traffic in our crowded streets is such that travel by pedestrians is at best difficult and dangerous. If their absolute right to enter upon a crossing when the signal permits it is not sustained, they would be almost without protection. Entering under this invitation, they cannot be charged with contributory negligence, if the signal switches when they are in the street. Caught in this position, the obligation rests upon the drivers of automobiles, not only to observe the situation, but to wait until the crossing is clear. * * *"

Plaintiff had a right under the circumstances we have described to keep walking, but with caution for her own safety, until she had completed the crossing. Whether, even assuming plaintiff was negligent as a matter of law[1] in looking and failing to see the taxicab, such negligence was a contributing factor to the accident or whether defendant Long's negligent breach of his duty to wait until the crossing was clear of pedestrians was the sole and proximate cause, is rather plainly a question of fact.[2]

A second assignment of error urges that the trial court's charge to the jury on the last clear chance doctrine was not warranted, because the evidence did not show that defendant Long had knowledge of plaintiff's peril, nor that there was time after acquiring such knowledge that Long could and the plaintiff could not have avoided the accident.

Whether or not Long knew of the plaintiff's perilous circumstances, the last clear chance doctrine is satisfied if he should have known, but for his negligence.[3] On this point we have the clear declaration, again from the Griffith case, supra, that: "The rate of speed at which defendant was proceeding across the street is of little importance. His negligence consisted in placing himself in a position where he could not observe the conditions at the crossing." It is true that in the case of a sudden emergency, the doctrine is not applied since this would require the defendant to act instantaneously.[4] Even granting Long's contention that he was paying attention to his

1. "The question as to whether a pededestrian, who is struck by an automobile * * *, at * * * a regular street crossing * * *, exercised proper care, or has been guilty of contributory negligence which will defeat his recovery for injuries sustained by such collision, is almost invariably one for the jury." 2 Blashfield's Cyclopedia of Automobile Law 1020, § 7.

2. Shu v. Basinger, D.C.Mun.App., 57 A.2d 295, 296, dealing with a "looking and failing to see" question.

3. Lewis v. Merzell, D.C.Mun.App., 117 A.2d 392.

4. Dean v. Century Motors, 81 U.S.App. D.C. 9, 154 F.2d 201.

driving and that his view of plaintiff's crossing was obstructed by other cars halted in lanes to his left, the same test must be applied. Before he started from his standing position he was duty bound to make certain that the crossing was clear of pedestrians.

However, the driver's testimony and the point of impact justified a finding that defendant Long was not paying attention to his driving. The plaintiff and her companions walked into the path of the taxicab and although its headlights were on, the driver did not see them until it was too late to avoid striking the plaintiff. On cross-examination, the cab driver testified that he started slowly when his light changed to green because he was "looking for somebody to haul." Seemingly he was more alert at this time for customers than for pedestrians who, the facts show, were in plain view before his vehicle. The jury was justified in drawing the conclusion that Long could have avoided the accident at the two mentioned points in time when, but for his negligence, he should have become aware of plaintiff's perilous circumstances, when plaintiff, oblivious of the danger, could not.

Affirmed.